961 F.2d 964
 295 U.S.App.D.C. 210
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Sabrina JENKINS, Appellant.
 No. 90-3117.
 United States Court of Appeals, District of Columbia Circuit.
 April 24, 1992.
 
 Before RUTH BADER GINSBURG, STEPHEN F. WILLIAMS and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal from an order denying appellants' motion to suppress was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. Upon full review of the issue presented, the court is satisfied that appropriate disposition of the case does not warrant a published opinion. See D.C.Cir.Rule 14(c). It is accordingly
 
 
 2
 ORDERED and ADJUDGED, for the reasons stated in the accompanying memorandum, that the order from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Appellants Sabrina Jenkins and Martin Maynard arrived at the Greyhound bus station in North East Washington, D.C. at about 4:30 AM in a bus from New York City. After passing through the station, they encountered plain-clothes Metropolitan police officers. The encounter led first to questions about the appellants' destination and the contents of their pockets and luggage, then to a brief detention of appellant Jenkins after one of the officers noticed a square-cornered bulge in the vicinity of Jenkins's abdomen, which both appellants attributed to pregnancy, and finally to a search of Jenkins, who proved to be carrying 440 grams of cocaine in a package that had caused the bulge.
 
 
 5
 Jenkins and Maynard attack the validity of the search (Maynard claiming that he had a reasonable expectation of privacy either in the drugs themselves or in the location where they were found, a claim we need not reach on our view of Jenkins's claim). The government relies on the officers' testimony that Jenkins consented to the search. Jenkins, recognizing that we must accept the district court's findings unless clearly erroneous, argues (1) that the government is improperly shifting its theory to a search on the basis of articulable suspicion, under Terry v. Ohio, 392 U.S. 1 (1968), and (2) that language in the district court decision indicates that the district court so completely misconceived Jenkins's testimony that its finding of consent cannot be accepted.
 
 
 6
 First, articulable suspicion comes into the case only indirectly. We do not understand the government to claim that the search was conducted pursuant to the articulable suspicion supplied by the discovery of the bulge, but merely that because of that suspicion, the detention occurring thereafter was valid and did not vitiate Jenkins's consent, as an illegal detention would have. The officers' testimony supports a finding of articulable suspicion, and the district court was not in error in concluding that "the police acted within constitutional boundaries in ... temporarily detaining the defendants".
 
 
 7
 Second, while the district court's explanation supporting its denial of the motion to suppress may have been inartfully worded, we do not find the incongruity that Jenkins claims. The court wrote:
 
 
 8
 The Court credits the officers' testimony that defendant Jenkins consented to being interviewed and then searched by the police. The defendant did not deny giving her consent, but testified that her consent was not voluntary because she was intimidated and threatened by the officers. The Court does not credit the defendants' testimony that she was threatened. Therefore, the Court finds that the police acted within constitutional boundaries in interviewing and temporarily detaining the defendants, and in searching defendant Jenkins' person.
 
 
 9
 Order Denying Defendants' Motion to Suppress.
 
 
 10
 While it is true that Jenkins testified that she did not consent to the search of her person, Suppression Hearing Transcript ("Transcript") at 97, she did testify that she had consented to being interviewed, id., so the judge's characterization of her testimony on consent might have referred to that limited part of the encounter. Moreover, not only were asserted officer threats a persistent theme of her testimony, see, e.g., Transcript at 86 (imputing to officer the remark "I am going to haul you down to the station"); id. at 87 ("by my seeing the gun, I got scared"); id. at 88 (imputing to officer the remark "You don't want to serve all this time"); id. at 95 ("he scared me by saying he was going to haul me down to the station"), but at least one statement was highly suggestive of a claim of coerced consent: "Because he [the officer] said he wanted her [a police matron] to search me and, if I didn't, he was going to haul me down to the station, so I was scared, and so I was searched." Id. at 89. Accordingly, the district judge could quite reasonably have understood Jenkins to be making at least an alternative claim that she had given a coerced consent.
 
 
 11
 Accordingly, we read the judge's order to say, in effect, that the judge: (1) credited the officers' testimony that they did not coerce Jenkins to consent to initial questioning and the search of her bag; (2) concluded that the temporary detention of Jenkins was lawful given the bulge in her shirt and her attribution of it to pregnancy; and (3) credited the officers' testimony that Jenkins in fact did consent to the search of her person notwithstanding Jenkins's testimony to the contrary. The factual findings are not clearly erroneous and the legal conclusions are correct on those facts. We therefore affirm.
 
 
 12
 Jenkins also argues that the district judge mistakenly assumed that she could not reduce the 121-month Guidelines sentence because it would lead to Jenkins's incarceration for many of her potential child-bearing years (Jenkins is 20). The fact that a Guidelines sentence will overlap with a significant portion of the defendant's child-bearing years is not, in fact, a basis for departure.